

**SO ORDERED.**
**SIGNED this 10th day of January, 2014**


**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:

VINCENT PERRY MORSE and                    No. 13-13188
MARY LYNN MORSE,                           Chapter 7

       Debtors;

MONFORD C. RICE, II and
REBECCA RICE

       Plaintiffs,

v.

                                        Adversary Proceeding
                                        No. 13-1110

VINCENT PERRY MORSE,

       Defendant.


*Appearances for Monford C. Rice, II and Rebecca Rice*

       Scott Raymond Maucere
       Maucere Law Group LLC

1

2125 Hickory Valley Road
Chattanooga, TN 37421

*Appearances for the Debtor*

Buddy B. Presley, Jr.
Presley & Simonds
1612 Gunbarrel Road
Suite 102
Chattanooga, TN 37421

## MEMORANDUM

Plaintiffs Monford C. Rice, II and Rebecca Rice (collectively "Plaintiffs") filed this adversary proceeding against defendant debtor Vincent Perry Morse ("Defendant" or "Debtor") seeking a judgment from this court that a debt in the amount of $223,500 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), 523(a)(4), and 523(a)(2)(A). [Doc. No. 1, Complaint].[1] The Plaintiffs further seek interest, attorneys' fees and costs. The Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012. [Doc. No. 9]. The Plaintiffs oppose the motion to dismiss. [Doc. No. 10].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The court concludes that it will grant in part and deny in part the motion to dismiss.

## I.   Background Facts

In their Complaint the Plaintiffs allege the following facts. Defendant is a resident of Hamilton County, Tennessee who is the owner of North Chattanooga Enterprises, LLC ("NCE"). Complaint, ¶ 7. Plaintiffs have filed claims of breach of contract, fraud, conversion, and unjust

---

[1] All docket entry references refer to docket entries for Adversary Proceeding 13-1110, unless otherwise noted.

enrichment against the Defendant in Hamilton County Chancery Court Part I, case number 12-

GS-555. *Id.* at 5. The Debtor filed his voluntary Chapter 7 bankruptcy petition on June 28, 2013.

[Bankr. Case No. 13-13188, Doc. No. 1].

On May 26, 2011 the Plaintiffs and NCE entered into a "New Construction Purchase and

Sale Agreement" ("Agreement"). *See* [Doc. Nos. 1-1, 1-2, Complaint, Ex. A, Ex. B]. Plaintiffs

were identified as Buyer and NCE was identified as Seller. The Agreement stipulated that the

Plaintiffs were purchasing lots 25 and 26 in the Perry Run Subdivision with the expectation that

NCE would construct a home for the Plaintiffs for a total amount of $390,000. The Plaintiffs

provided the Defendant personally with a check for earnest money in the amount of $19,500.

[Doc. No. 1-3, Complaint, Ex. C]. The check was made out to the Defendant personally rather

than NCE. Plaintiffs allege that this arrangement was at the Defendant's insistence. Complaint, ¶

11. The Agreement provides in a section entitled "Earnest Money" that:

> **In the event that the Seller is the holder of the Earnest Money, Buyer acknowledges that said funds may be used for the construction of Property.** In the event any Earnest Money check is not honored, for any reason, by the bank upon which it is drawn, Holder shall promptly notify Buyer and Seller. Buyer shall have (1) day after notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon written notice to Buyer via the Notification form or equivalent written notice. Earnest Money is to be deposited promptly after the Binding Agreement Date or the agreed upon delivery date in this Earnest (sic) paragraph or as specified in the Special Stipulations paragraph contained at paragraph 29 herein. Holder shall disburse Earnest (sic) only as follows:
>
> > (a) at closing to be applied as a credit toward Buyer's Purchase Price;
> > (b) upon a written agreement signed by all parties having an interest in the funds;
> > (c) upon order  of a court or arbitrator having jurisdiction over any dispute involving the Earnest Money;
> > (d) upon a reasonable interpretation of the Agreement; or
> > (e) upon the filing of an interpleader action with payment to be made to the clerk of the court having jurisdiction over the matter.
>
> Holder shall be reimbursed for, and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees. The prevailing party in the interpleader action shall be entitled to collect from the other party the costs and expenses

reimbursed to Holder. No party shall seek damages from Holder (nor shall Holder be liable for the same) for any matter arising out of or related to the performance of Holder's duties under this Earnest Money paragraph. Earnest Money shall not be disbursed prior to fourteen (14) days after deposit unless written evidence of clearance by bank is provided.

Agreement, p. 3.

The original version of the Agreement was not accepted by the seller NCE. NCE countered with changes that specifically related to the Earnest Money paragraph. The counter offer provided that "[e]arnest money is 5% of the purchase price paid to builder." *See* [Doc. 1-1, Agreement, p. 13]. That counter offer was rejected by the Plaintiffs; however, the Plaintiffs did make a second counter offer which provided that "[e]arnest money is 5% of the purchase price made payable to builder Vincent Morse and shall be refundable. All other terms of the Paragraph 3 Earnest Money shall remain the same." [Doc. No. 1-2, Ex. B]. The second offer was accepted on May 26, 2011, although the signature is hard to decipher.

The Defendant admitted in his deposition, attached to the Complaint as Exhibit 7, that he did not keep the Plaintiffs' earnest money in an escrow account. [Doc. No. 1-6, Deposition of Vincent Morse ("Morse Dep."), p. 164]. The Plaintiffs allege the Defendant used the earnest money for his general operating expenses and never returned the money to the Plaintiffs. Complaint, ¶ 13; Morse Dep., p. 164.

The Plaintiffs contend that NCE is merely a "shell company used as Defendant's alter ego." Complaint,¶ 14. The Plaintiffs further assert that NCE was intentionally underfunded and that funds in NCE were transferred to another company owned by the Debtor, Deck Masters, Inc. Complaint, ¶ 14. Plaintiffs have attached the Defendant's deposition transcript to their Complaint in which the Defendant outlines his various companies and their interrelationships. Morse Dep. Plaintiffs assert that the Defendant failed to follow corporate formalities with respect to NCE. Complaint, ¶ 14.b. The Defendant admitted in his deposition that the two companies regularly

used the same employees and that Deck Masters was the "mother company." Morse Dep., pp. 55,

46.  The Plaintiffs allege that the Defendant created NCE as a way to fund the financially

stressed Deck Masters without the creditors of Deck Masters being able to reach those funds.

Complaint, ¶ 14.c.

The Plaintiffs also allege the Defendant used an agent to oversee the building of the

house who did not have a valid contractor's license and misrepresented the agent's status to the

Plaintiffs. *See* Complaint, ¶ 16. They claim this agent was the reason they cancelled the

Agreement. They also claim that Defendant "willfully violated" the terms of the Agreement and

then sold the property at issue to another buyer for a profit which allegedly unjustly enriched the

Defendant. *Id.* at ¶ 16.e. Following the alleged breach of the Agreement, the Defendant refused

to return the earnest money to the Plaintiffs. They allege they suffered costs and legal fees and

assert that the Defendant was found in contempt of court for failing to attend depositions. *Id.* at ¶

16.f.

In support of their Section 523(a)(6) claim, the Plaintiffs assert that Defendant, personally

and through NCE, "willfully violated the Agreement when they [sic] changed the Elevation

Plans without the consent of the defendants, failed to complete the construction of the house on

time, and failed to obtain approval from Defendants of the construction details as required by the

Agreement. Defendants then unjustly profited by selling the property to another buyer at a

markup." Complaint, ¶ 21. They further allege that "Defendant acted willfully and maliciously

when he instructed Plaintiffs to write a check to himself personally, deposited the funds in an

account for his own use, and refused to return the earnest money." Complaint, ¶ 23.

With respect to their claim under Section 523(a)(4) Plaintiffs assert that:

By mishandling and misusing Plaintiffs' earnest money, Defendant committed
fraud while acting in a fiduciary capacity.

5

Defendant failed to hold Plaintiff's earnest money in trust in violation of the
Tennessee Real Estate Commission's Rule 1260-2-.09, (8) which states:
"(e)arnest money shall be deposited into an escrow or trustee account promptly
upon acceptance . . ."). (Tenn. Comp. R. & Regs. 1260-02-.09.)

Defendant admitted to spend [sic] the earnest money, which he was required to
hold in trust, in a way inconsistent with the Agreement. . .

Defendant fraudulently induced disbursement, misused and subsequently
wrongfully withheld Plaintiffs' $19,500 earnest money.
Defendant misrepresented to Plaintiffs, both actually and constructively through
the contract, that the earnest money was to be held in trust.

Complaint, ¶¶ 28-32. They further allege fraud and misrepresentation by the Defendant

regarding the use of the earnest money and assert that they relied on those misrepresentations.

*Id.*at ¶¶ 34-35.

In support of their Section 523(a)(2) claim, Plaintiffs claim that they "were promised

orally and in writing, . . ., that earnest money will be held in trust or only be used for

construction of their Property. In reasonable reliance on this false promise, Plaintiffs wrote a

check to the Defendant in the total amount of $19,500. Upon information and belie[f], this was a

false promise from its inception." Complaint, ¶ 42.

## II.      Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this

district provide this court with jurisdiction to hear and decide this adversary proceeding.  The

Plaintiffs' action regarding the dischargeability of particular debts is a core proceeding.  *See* 28

U.S.C. § 157(b)(2)(I).

## III.     Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil

Procedure 12(b) applies to adversary proceedings. *See* Fed. R. Bankr. P. 7012(b). Federal Rule of

Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "treat as true all of the well-pleaded allegations of the complaint." *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quotation omitted). The court will thus review the motion to dismiss by assuming the facts as alleged by the Plaintiffs.

## IV.    Analysis

The Defendant argues that the Plaintiffs' Complaint does not meet the pleading standards provided in Federal Rule of Civil Procedure 8 and does not have the level of specificity required by Federal Rule of Civil Procedure 9 for allegations of fraud. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Federal Rule of Bankruptcy Procedure 7008 incorporates Federal Rule of Civil Procedure 8 into adversary proceedings. Federal Rule of Civil Procedure 9(b), applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7009, requires that allegations of fraud must be pled with particularity. *See* Fed. R. Civ. P. 9(b). This requirement

includes allegations of fraud made pursuant to 11 U.S.C. § 523(a)(2)(A).  *See MBNA America*

*Bank, N.A. v. Henning (In re Henning)*, 309 B.R. 508, 515 (Bankr. W.D. Mich. 2004).  The rule

requires that "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  *Id.*  Courts in this Circuit have explained that

"'[t]o satisfy Fed.R.Civ.P. 9(b), a plaintiff must at a minimum allege the *time, place and contents*

*of the misrepresentation(s)* upon which he relied.'" *Matter of Dunlevy*, 75 B.R. 914 (Bankr. S.D.

Ohio 1987) (quoting *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)) (emphasis

in original).

        The Plaintiffs argue that they have provided ample factual allegations demonstrating the

existence of each element of their claims pursuant to the simple pleading requirements of Rule 8

and the heightened pleading requirements of Rule 9. In addition, the Plaintiffs have requested an

opportunity to amend in their Complaint if the court finds it to be insufficient to state their

claims. The court notes that the right to amend should be freely given when justice so requires.

Fed. R. Bankr. P. 7015; Fed. R. Civ. P. 15(a)(2). Further, "'[g]ranting leave to amend is in

keeping with the general policy of the Federal Rules of Civil Procedure that controversies should

be decided on their merits and not on procedural technicalities.'" *Huntington Nat'l Bank v.*

*Schwartzman (In re Schwartzman)*, 63 B.R. 348, 352 (Bankr. S.D. Ohio 1986) (quoting *163rd*

*Street & Jamaica Avenue Management Co., Ltd., v. Hussain (In re Hussain)*, 54 B.R. 755, 758

(Bankr. E.D.N.Y. 1985)).

        **A.      Plaintiff's Section 523(a)(2)(A) Claim**

        11 U.S.C. § 523(a)(2)(A) prohibits discharges of debt based on "(A) false pretenses, a

false representation, or actual fraud, other than a statement respecting the debtor's or an insider's

financial condition; . . ." The Sixth Circuit has held that to demonstrate nondischargeability

8

pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor must prove four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir.

1998).

An objection to dischargeability may be based on something broader than a specific

statement by the debtor. In *In re Vitanovich* the Sixth Circuit Bankruptcy Appellate Panel

addressed the meaning of "actual fraud" within the context of § 523(a)(2)(A):

> We adopt the position of the Court of Appeals for the Seventh Circuit that actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions. When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code.

*Mellon Bank v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) (citing

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000)). The Sixth Circuit Bankruptcy

Appellate Panel made clear that it finds that "actual fraud" is broader than a misrepresentation

and encompasses "any deceit, artifice, trick, or design involving direct and active operation of

the mind, used to circumvent and cheat another." *In re Vitanovich*, 259 B.R. at 877 (citing

*McClellan*, 217 F.3d at 893). The Sixth Circuit Bankruptcy Appellate Panel further explained

that:

> "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud."

*In re Vitanovich*, 259 B.R. at 877 (quoting *Gerad v. Cole (In re Cole)*, 164 B.R. 951, 953 (Bankr.

N.D. Ohio 1993)) (other quotation omitted).

In this case the court concludes that the Plaintiffs have alleged sufficient facts in support of their Section 523(a)(2)(A) claim to survive the Defendant's motion to dismiss. The court must assume that the allegations asserted by the Plaintiffs are true for purposes of the Defendant's motion to dismiss. The Plaintiffs have alleged that Defendant is the principal of NCE. He represented to them that the earnest money would be used to build the residence they intended to purchase. They also allege that he represented that his agent was a licensed contractor to induce them to enter into the contract and to provide him with the $19,000. They further assert that he used the $19,000 to fund the ordinary operations of NCE and Deck Masters rather than construct the Plaintiffs' residence. Thus, the court finds that the Plaintiffs have alleged a misrepresentation that the Debtor knew was false at the time he made it. The Plaintiffs assert that the Debtor intended to deceive them regarding his use of the earnest money, that they relied on those misrepresentations and that the alleged misrepresentations caused them damages. Thus, the court finds the Plaintiffs have adequately alleged a claim under Section 523(a)(2)(A). The Defendant's motion to dismiss this claim will be DENIED.

**B.      Non-dischargeability Pursuant to 523(a)(4)**

11 U.S.C. § 523(a)(4) states in relevant part: "A discharge under section . . . 727 of this title does not discharge an individual debtor from any debt − . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . ." 11 U.S.C. § 523(a)(4). Federal common law will determine the meaning of the terms in Section 523(a)(4). *See SmithKline Beecham Corp. v. Lam (In re Lam)*, No. 06-68805-MGD, 2008 WL 7842072, at *3 (Bankr. N.D. Ga. Mar. 27, 2008) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901 (7th Cir. 1991); *In re Wallace*, 840 F.2d 762 (10th Cir. 1988)) (other citations omitted).

### 1.    Fraud or Defalcation While Acting in a Fiduciary Capacity

With respect to defalcation while acting in a fiduciary capacity, the Sixth Circuit has

provided that the preponderance of the evidence must establish: "(1) a pre-existing fiduciary

relationship, (2) a breach of that relationship, and (3) resulting loss." *Patel v. Shamrock

Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009) (citing *Board of

Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007)).  The Court further cautioned

that "the term 'fiduciary capacity' is narrower here than it is in some other contexts: section

523(a)(4) covers only 'express' or 'technical trusts' and not trusts arising out of 'the very act of

wrongdoing.'" *In re Patel*, 565 F.3d at 968 (quoting *Davis v. Aetna Acceptance Co.*, 293 U.S.

328, 331, 55 S.Ct. 151 (1934)).  In addition, "[a] 'defalcation' encompasses not only

embezzlement and misappropriation by a fiduciary, but also the 'failure to properly account for

such funds.'" *In re Bucci*, 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Capitol Indemnity Corp. v.

Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir. 1985)).  The Sixth

Circuit has also:

> adopted a narrow definition of the defalcation provision and held that it does not
> apply to someone who merely fails to meet an obligation under a common law
> fiduciary relationship.  Accordingly, the defalcation provision applies to 'only
> those situations involving an express or technical trust relationship arising from
> placement of a specific res in the hands of the debtor.'  To establish the existence
> of an express or technical trust, a creditor must demonstrate: '(1) an intent to
> create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary.'

*In re Bucci*, 493 F.3d at 639-40 (quoting *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d

176, 179 (6th Cir. 1997)).

As explained by the Sixth Circuit, "section 523(a)(4) covers only 'express' or 'technical

trusts' and not trusts arising out of 'the very act of wrongdoing.'" *In re Patel*, 565 F.3d at 968.

The Sixth Circuit has also clarified that "fiduciary," for purposes of section 523(a)(4):

> does not extend to implied trusts, which are imposed on transactions by operation
> of law as a matter of equity.  Moreover, the requisite trust relationship must exist
> prior to the act creating the debt and without reference to it.  State statutes which
> impose a trust ex-maleficio are not within the scope of [prior section 523(a)(4)]
> since such trusts only arise upon an act of misappropriation.

*Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251 (6th Cir. 1982) (citing

*Davis v.Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153 (1934)) (other citations

omitted).  *See also, In re Bucci*, 493 F.3d at 639 (noting that the Sixth Circuit has "refused to

extend [the defalcation provision] to constructive or implied trusts imposed by operation of law

as a matter of equity").

      To prove fraud or defalcation by a fiduciary, the Plaintiffs must prove "the existence of

an express or technical trust," and "demonstrate: '(1) an intent to create a trust; (2) a trustee; (3) a

trust res; and (4) a definite beneficiary.'" *In re Bucci*, 493 F.3d at 639-40 (quoting *In re Garver*,

116 F.3d at 179). Further, "state law is important in determining when a trust relationship

exists." *In re Johnson*, 691 F.2d at 251. *See also, Baker v. Wentland (In re Wentland)*, 410 B.R.

585, 597 (Bankr. N.D. Ohio 2009) (noting that "the determination of whether an express or

technical trust exists is governed by state law"). Under Tennessee law:

> [a] valid trust need not be in writing.  It can be created orally unless the language
> of the written conveyance excludes the existence of a trust.  However, when a
> party seeks to establish an oral trust, it must do so by greater than a preponderance
> of the evidence.
>
> The existence of a trust requires proof of three elements: (1) a trustee who holds
> trust property and who is subject to the equitable duties to deal with it for the
> benefit of another, (2) a beneficiary to whom the trustee owes the equitable duties
> to deal with the trust property for his benefit, and (3) identifiable trust property.

*Kopsombut-Myint Buddhist Center v. State Board of Equalization*, 728 S.W.2d 327, 333 (Tenn.

Ct. App. 1987).

      Although the Plaintiffs cite cases finding trust relationships, the court notes that those

12

cases are not cases involving Tennessee trusts or Tennessee law and are mainly cases involving "out of trust" transactions in situations such as floor-plan financing agreements. *See e.g.*, *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493 (4th Cir. 2008) (trust found under Virginia law in floor plan financing arrangement of farm equipment); *Chrysler Credit Corp. v. Perry Chrysler Plymouth*, 783 F.2d 480 (5th Cir. 1986) (trust involving vehicle "floor plan mortgage," although court found fiduciary duty on part of corporation, it did not find one on behalf of individual); *Inland Bank & Trust v. Chachula (In re Chachula)*, No. 11-A 00073, 2011 WL 2551187, at *2 (Bankr. N.D. Ill. June 23, 2011) (vehicle sales agreement found to create an express trust under applicable trust law). The trust on which the Plaintiffs rely is the Agreement which required an escrow in the original version. The final version provided that the escrow funds would be paid to the Defendant. The Plaintiffs signed the final version which effectively destroyed the obligation for the seller NCE to hold any of the Earnest Money. Although the Plaintiffs cite to Tennessee Real Estate Commission Rules in their Complaint, which allegedly state that earnest money should be deposited in an escrow or trustee account, there is no indication that such rules would apply to the Defendant under the final Agreement. Nor does the court find, based on the allegations made in the Complaint, that Plaintiffs have alleged the first two elements of their defalcation claim, demonstration of an intent to create a trust and a trustee. In addition, the court is aware of the "narrow definition" applied to trusts for purposes of a Section 523(a)(4) defalcation claim by the Sixth Circuit. *See In re Bucci*, 493 F.3d at 639-40. Therefore, the court concludes that it will GRANT the Debtor's motion to dismiss the Plaintiffs' Section 523(a)(4) claim with prejudice to the extent the Plaintiffs are seeking to prove that their debt is based on defalcation, and is therefore non-dischargeable.

2.      **Embezzlement**

The Sixth Circuit has explained that:

> [f]ederal law defines "embezzlement" under section 523(a)(4) as "the fraudulent
> appropriation of property by a person to whom such property has been entrusted
> or into whose hands it has lawfully come."  A creditor proves embezzlement by
> showing that he entrusted his property to the debtor, the debtor appropriated the
> property for a use other than that for which it was entrusted, and the
> circumstances indicate fraud.

*Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996), abrogated on other

grounds as explained in *National Dev. Servs. V. Denbleyker,* 251 B.R. 891 (Bankr. D. Colo.

2000) (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982)

and *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295 (1895)) and (citing *Ball v.

McDowell (In re McDowell)*, 162 B.R. 136, 140 (Bankr. N.D. Ohio 1993)).  To demonstrate

embezzlement a creditor must prove all three elements: "(1) 'that he entrusted his property to the

debtor,' (2) that 'the debtor appropriated the property for a use other than that for which it was

entrusted,' and (3) that 'the circumstances indicate fraud.'" *Cash America Fin. Servs., Inc. v. Fox

(In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (quoting *In re Brady*, 101 F.3d at 1173).

With respect to the third element, the Sixth Circuit has noted:

> The "fraud" required under § 523(a)(4) is "fraud in fact, involving moral turpitude
> or *intentional* wrong."  Accordingly, embezzlement claims under § 523(a)(4)
> require "proof of the debtor's fraudulent intent in taking the [creditor's] property."
> As the *Brady* definition suggests, the debtor's fraudulent intent may often be
> shown by circumstantial evidence.

*In re Fox*, 370 B.R. at 116 (quotations and citations omitted). Circumstantial evidence of fraud is

sufficient, but the court must have some evidence of the deceit or scheme to find fraudulent

intent.  *In re Fox*, 370 B.R. at 116-117. Embezzlement does not require the existence of a

fiduciary relationship. *See King v. Spivey (In re Spivey)*, No. 09-3028, 2010 WL 3980132, at *11

(Bankr. E.D. Tenn. Oct. 7, 2010).

In this case it is unclear from whom the Debtor allegedly embezzled funds and for what purpose he used those funds that were not contemplated under the parties' Agreement. Thus, the facts, as alleged here, present a close question. However, with respect to the first element of embezzlement, the court concludes that the Plaintiffs adequately alleged that they entrusted their earnest money to the Defendant as the builder to pay for the construction of the house. They further contend that he used the funds for a purpose other than construction of their residence and have provided citations to the Defendant's deposition testimony suggesting that the Defendant commingled funds from NCE and Deck Masters. The court further finds that, with respect to the third element of circumstances indicating fraud, the Plaintiffs have alleged enough facts to suggest that the Defendant took their earnest money with knowledge that he had no intention of using those funds to pay for the construction of the residence. Thus, the court concludes that the Plaintiffs have adequately alleged circumstantial evidence of a scheme of deceit indicating fraud or intentional wrongdoing, as required by Rule 9. For these reasons, the court will DENY the Defendant's motion to dismiss the Plaintiffs' Section 523(a)(4) claim with respect to embezzlement.

### C.    Discharge Pursuant to 11 U.S.C. § 523(a)(6)

Whether a debt is dischargeable pursuant to 11 U.S.C. § 523(a)(6) is determined by analyzing federal law. *See e.g., J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 800-01 (Bankr. N.D. Ohio 2001) (citing *Call Federal Credit Union v. Sweeney (In re Sweeney)*, 264 B.R. 866, 870 (Bankr. W.D. Ky. 2001); *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 388 (Bankr. N.D. Ohio 1999)). 11 U.S.C. § 523(a)(6) provides that a debt that is *both* willful *and* malicious is nondischargeable. *See* 11 U.S.C. § 523(a)(6). "[T]he judgment must be for an injury that is both willful and malicious.  The absence of one creates a dischargeable debt." *In re*

15

*Markowitz*, 190 F.3d at 463. A creditor bears the burden of demonstrating a claim pursuant to 11

U.S.C. § 523(a)(6) by a preponderance of the evidence. *See Steier v. Best (In re Best)*, 109 F.

App'x 1, 2, 2004 WL 1544066 (6th Cir. 2004). Such exceptions to discharge are "strictly

construed against creditors." *Id.* However, once a creditor establishes a prima facie case, "the

burden shifts to the Debtors to present credible evidence that a defense to the liability exists." *JP*

*Morgan Chase Bank, N.A. v. Zwosta (In re Zwosta)*, 395 B.R. 378, 382 (B.A.P. 6th Cir. 2008).

The U.S. Supreme Court has addressed the meaning of "willful" within the context of §

523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974 (1998). As summarized by the

Sixth Circuit:

> [t]he Court held that "willful" means "voluntary," "intentional," or "deliberate."
> As such, only acts done with the intent to cause injury – and not merely acts done
> intentionally – can cause willful and malicious injury. The Court explained its
> holding by discussing the importance of context:
>
>> The word "willful" in (a)(6) modifies the word "injury," indicating
>> that nondischargeability takes a deliberate or intentional *injury*, not
>> merely a deliberate or intentional act that leads to injury. Had
>> Congress meant to exempt debts resulting from unintentionally
>> inflicted injuries, it might have described instead "willful acts that
>> cause injury." Or, Congress might have selected an additional
>> word or words, i.e., "reckless" or "negligent," to modify "injury."
>> Moreover, as the Eighth Circuit observed, the (a)(6) formulation
>> triggers in the lawyer's mind the category "intentional torts," as
>> distinguished from negligent or reckless torts. Intentional torts
>> generally require that the actor intend "the *consequences* of an
>> act," not simply "the act itself."

*In re Markowitz*, 190 F.3d at 464 (quoting *Geiger*, 523 U.S. at 61-62, 118 S.Ct. at 977).

Following the lead of the Supreme Court in *Geiger*, the Sixth Circuit held that "unless

'the actor desires to cause consequences of his act, or . . . believes that the consequences are

substantially certain to result from it,' he has not committed a 'willful and malicious injury' as

defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6[th]

16

Cir. 1999).  Mere proof of conversion is not sufficient to satisfy the requirements of § 523(a)(6).

*See In re Jones*, 276 B.R. at 801.  Further, "'[t]o find that a debtor intended to cause the

consequences of his act or believed that the consequences were substantially certain to result

from his act, it is necessary to look into the debtor's mind, subjectively.'" *Gabel v. Olson (In re*

*Olson)*, 355 B.R. 660, 665 (Bankr. E.D. Tenn. 2006) (quoting *Monsanto Co. v. Wood (In re*

*Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004)).

 Proof of willful behavior must often be demonstrated through the use of circumstantial

evidence.  *See In re Jones*, 276 B.R. at 802.  The bankruptcy court in *In re Jones* noted that

"willful" behavior can "be indirectly established by the creditor demonstrating the existence of

two facts: (1) the debtor knew of the creditor's lien rights; and (2) the debtor knew that his

conduct would cause injury to those rights." *Id.*  As another bankruptcy court in this Circuit

recently observed, "[t]he willfulness element is designed to separate negligent or inadvertent acts

from deliberate and intentional ones, and to ensure that the conduct in question falls within the

ambit of an intentional tort." *In re Wierenga*, 431 B.R. 180, 185 (Bankr. W.D. Mich. 2010).

 A malicious injury occurs "when a person acts in conscious disregard of [his] duties or

without just cause or excuse." *In re Jones*, 276 B.R. at 803 (citing *Gonzalez v. Moffitt (In re*

*Moffitt),* 254 B.R. 389, 396 (Bankr. N.D. Ohio 2000)). A finding of maliciousness does not

require a determination of ill-will or specific intent.  *See Monsanto Co. v. Trantham (In re*

*Trantham)*, 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004). In addition, "malice does not require any ill

will or specific intent to do harm, only to do an act without just cause or excuse, but that is

beyond negligence or recklessness." *West Michigan Community Bank v. Wierenga (In re*

*Wierenga)*, 431 B.R. 180, 185 (Bankr. W.D. Mich. 2010).

 The Sixth Circuit has also cautioned that:

the injury must invade the creditor's legal rights.  Section 523(a)(6)'s term
"willful . . . means a deliberate or intentional invasion of the legal rights of
another, because the word 'injury' usually connotes legal injury (*injuria*) in the
technical sense, not simply harm to a person."  The conduct "must be more
culpable than that which is in reckless disregard of creditors' economic interests
and expectancies, as distinguished from . . . legal rights.  Moreover, knowledge
that legal rights are being violated is insufficient to establish malice . . . ."

*In re Best*, 109 F. App'x at 6 (quoting *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852

(8th Cir. 1997) and *First Federal Bank v. Mulder (In re Mulder)*, 306 B.R. 265, 270 (Bankr. N.D.

Iowa 2004)).

The elements of a claim under 11 U.S.C. § 523(a)(6) are that: "(1) the debtor's conduct

was willful and malicious, (2) [the creditor] suffered an invasion of [its] legal rights or to the

legal rights to [its] property, and (3) the invasion was caused by the debtor's conduct."  *National

Sign and Signal v. Livingston*, 422 B.R. 645, 653 (W.D. Mich. 2009) (citing *CMEA Title Agency,

Inc. v. Little (In re Little)*, 335 B.R. 376, 383 (Bankr. N.D. Ohio 2005)).

The Defendant relies on *Tomlin v. Crownover (In re Crownover)* in support of its

position that a mere breach of contract does not establish a willful and malicious act pursuant to

Section 523(a)(6). 417 B.R. 45 (Bankr. E.D. Tenn. 2009). It is true that in *In re Crownover* the

court noted that "[m]ere breach of contract does not come within either of [the] discharge

exceptions" of Section 523(a)(2)(A) and 523(a)(6). *Id.* at 54. However, in that case the plaintiffs

were homeowners who had obtained a state court judgment against the debtor builder for breach

of contract and violations of the Tennessee Consumer Protection Act and sought to use the

doctrine of collateral estoppel to obtain summary judgment against the debtor on their

dischargeability claims. The court concluded that the state court judgment was insufficient to

establish all the intentional elements of the plaintiffs' nondischargeability claims and denied in

part the plaintiffs' motion for summary judgment. *Id.* at 58. Thus, the court required the plaintiffs

18

to prove some of the elements of their nondischargeability claims at trial. In contrast, the Defendant is asking the court to dismiss the Plaintiffs' claims in their entirety at the pleading stage of the case.

Defendant further claims that the Plaintiffs contracted with NCE and that he is not personally responsible for the actions of that corporation. The Plaintiffs cite *Automotive Finance Corp. v. Rigoroso (In re Rigoroso)*, a case in which the bankruptcy court noted that "[o]ther courts have routinely found that a debtor who is an officer or director of a corporation can be held personally liable for the tortious acts of the corporation when he actively participated in those acts." 453 B.R. 612, 616 (Bankr. D.S.C. 2011) (citing *Theroux v. HSA Mortgage Co. (In re Theroux)*, 49 F.3d 728, 1995 WL 103342, at *4 (5th Cir. Feb. 22, 1995) and *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559 (11th Cir. 1987)) (other citations omitted). *See also*, *In re Leonard*, 2011 WL 2551187, at *4 (Bankr. E.D. Tenn. May 2, 2012); *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 125 (6th Cir. 1985).

The court concludes that after reviewing the allegations made in the Complaint, the sufficiency of the facts alleged in support of the Plaintiffs' Section 523(a)(6) claim again presents a close question. The Agreement is vague regarding what NCE or the Defendant was supposed to do with the earnest money. If the Defendant spent the earnest money on the residence to be constructed for the Plaintiffs, then there is no conversion of their property. It is further unclear who was responsible for refunding the earnest money, NCE or the Debtor personally. To that point, Plaintiffs have alleged that NCE is the alter ego of the Debtor. Finally, the Complaint is confusing with respect to whether the Agreement was breached or cancelled and when the termination occurred. However, the Plaintiffs do allege specific acts from which the court can infer that the Debtor as the builder was ignoring the Plaintiffs' rights under the

19

contract while retaining their down payment. The court recognizes the strong policy in the Sixth

Circuit that disputes should be resolved on the merits, rather than on procedural technicalities.

*See e.g., Ale v. Tennessee Valley Authority*, 269 F.3d 680, 692-693 (6th Cir. 2001), superseded by

regulation on other grounds as explained in *Beauchamp v. Flex-N-Gate LLC*, 357 F.Supp.2d

1010, 1013 n.3 (E.D. Mich. 2005). Further, if the Defendant induced the Plaintiffs to give him

earnest money personally that he never intended to use on the construction of their residence and

was deliberately ignoring their requests pursuant to the Agreement, such conduct could rise to

the level of an intentional injury to Plaintiffs' legal rights without just cause or excuse. The

Plaintiffs have further alleged that they were harmed by the Defendant's conduct. Therefore, the

court concludes that it will deny the motion to dismiss the Plaintiffs' Section 523(a)(6) claim.

### V.    Conclusion

As summarized *supra*, the court concludes that it will DENY the Defendant's motion to

dismiss the Plaintiffs' Section 523(a)(2)(A) claim. It will further GRANT the Defendant's

motion to dismiss the Plaintiffs' Section 523(a)(4) claim with respect to defalcation. Finally, it

will DENY the Defendant's motion to dismiss the Plaintiffs' Section 523(a)(4) claim with

respect to embezzlement and their 523(a)(6) claim.

A separate order will enter.

# # #